J. E. JOHNSON, Appellee, v. S. E. CARTER and F. A. RUMBAUGH, Appellants, and A. H. AUGUSTINE, J. L. WILLEY and MRS. J. L. WILLEY, Appellees.

**Fraud:** EVIDENCE: INFERENCES OF FRAUD. Fraud is not to be presumed, yet courts will not ignore clear and convincing evidence of bad faith, or refuse to draw inferences of fraud from circumstances pointing irresistibly to that result.    In the instant case the plaintiff was a simple, confiding and inexperienced foreigner, and the evidence is held sufficient to show that defendants obtained title to his property by taking an undue and fraudulent advantage of his situation.

**Fraud:** PLEADING: SUFFICIENCY OF ALLEGATION: OBJECTION. In pleading fraud the facts relied upon should be clearly stated; but although fraud is charged in somewhat general terms, still if sufficiently specific to authorize recovery on that ground there is no just cause of complaint, in the absence of a motion for more specific statement.    And where the cause has been tried by both parties on the theory that the pleadings embraced all matters considered in making up the findings, it is too late to raise the question for the first time on appeal.

**Fraud:** CANCELLATION OF CONVEYANCES: EQUITABLE JURISDICTION: DAMAGES. As a general rule the party who has invoked the jurisdiction of a court of equity to cancel a conveyance of his

property on the ground of fraud, is bound by the election of his remedy, and can not obtain a money judgment for the value of his property as in a law action; but if some action of the party charged with fraud has made rescission impossible or impracticable, equity may retain jurisdiction and assess damages in favor of the injured party if that appears to be the only equitable remedy; and he may be allowed the amount he would have received under the contract had the sale been completed in good faith, the contract price being considered as evidence of the value of the property.

Same: PLEADINGS: AMENDMENT. Where a rescission of a sale of property could be decreed, the plaintiff was properly allowed damages under a prayer for general relief, and an amendment to the prayer of the petition at the close of the trial specifically asking such relief introduced no prejudicial change in the issues.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

FRIDAY, MARCH 12, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

ACTION in equity to set aside certain conveyances, and to quiet title to real estate. Decree denying equitable relief, but giving plaintiff a money judgment against the defendants Carter and Rumbaugh, who appeal.—*Affirmed.*

*Bowen & Brockett,* for appellants.

*A. K. Stewart,* for appellee.

WEAVER, J.—The plaintiff alleges and his testimony tends to show that he, being at the time the owner of a house and lot in Des Moines, authorized the defendant Carter, a real estate agent, to sell the same subject to a mortgage thereon at the net price of $1,150. At this time Carter had upon his list a forty-acre tract of land in Mis-

souri, which was owned, nominally at least, by the defend-
ant Rumbaugh, for whom Carter was acting as agent, or
with whom he was jointly interested in said land.  Carter
reported to plaintiff that he had sold the house and lot
to Rumbaugh at the authorized price, and procured plain-
tiff to execute and place in his hands a deed therefor to the
alleged purchaser, Rumbaugh, the plaintiff supposing, as
he alleges, that he was to receive the net purchase price
in cash.  Carter had for some time held a deed from Rum-
baugh for the Missouri land, in which deed the blank for
the name of the grantee had been left unfilled.  At the time
of procuring the deed from plaintiff to Rumbaugh, or soon
afterwards, Carter wrote plaintiff's name as grantee in
the deed for the Missouri land, and procured plaintiff to
sign a contract to sell said land to one Marts, a person
without financial responsibility.  Carter and Rumbaugh
represented to plaintiff that the Missouri land was worth
as much or more than his equity in the house and lot,
knowing at the same time that such representations were
false, and that plaintiff had no knowledge of the truth in
respect thereto, and also represented to plaintiff that Marts
was anxious to buy the land, and would enter into a con-
tract for its purchase, and pay therefor on or before the
1st day of January following, thereby securing the receipt
by plaintiff of the price of his house and lot.  Plaintiff is
a native of Sweden, and not well versed in the English lan-
guage, and is evidently an unsophisticated person, well cal-
culated to become the prey of those who are inclined to
take advantage of the weak and unwary.  He seems to
have understood the Missouri land deal was simply a meth-
od by which Carter and Rumbaugh were securing to him
the net price of his house and lot, which sum was to be
paid him on or before the 1st of the following January,
as above stated.  Marts concedes that he agreed to pay the
pretended purchase price for the land on the date named,
and that he has in fact never paid anything thereof, except

the sum of $100, which he claims to have paid Carter, who absorbed it as commission. It is also the claim of plaintiff that the sale of the land to Marts by Carter and Rumbaugh was a mere pretense, arranged by them to induce him to part with title to his house and lot, when they well knew that Marts was irresponsible, and that said sale would never be consummated. All of the deeds and papers were left in the possession of Carter, who tolled the plaintiff along by various promises and representations, and not until after January 1st did plaintiff awake to the realization that his property was gone, and he had nothing whatever of value to show for it. Meanwhile Rumbaugh had conveyed the house and lot to the defendant Augustine, who in turn conveyed to the defendant Willey, who appears to have purchased without knowledge of the fraud which had been perpetrated upon the plaintiff. On the other hand, Carter and Rumbaugh plead and offer testimony to show that in all of their dealings with plaintiff they acted in entire good faith, and that plaintiff has sustained no wrong or injury at their hands. By agreement of parties the issues joined were referred to Hon. W. H. Bailey, to hear the testimony and to report his findings thereon. Trial was had before the referee, who reported his findings of fact and conclusions of law. Stated briefly, he found that' plaintiff's allegations of fraud and deception as against Carter and Rumbaugh were sustained by the evidence, and that the defendant Augustine, and thereafter the defendant Willey, had taken title to the house and lot in good faith, and that such title ought not to be set aside or disturbed in this proceeding, but that plaintiff ought to be compensated by the recovery of a personal judgment against Carter and Rumbaugh for the sum of $1,145, with interest from January 1, 1907, upon payment of which plaintiff should be required to convey to said defendants whatever right or interest he may have in the Missouri land. The defendants' exceptions to the referee's report

were overruled by the court, and decree entered as there recommended.

I.    The principal contention on part of counsel for the appellant is to the effect that the charge of fraud is not sustained by the record, but a reading of all of the testimony leads us to the opposite conclusion. The trail of fraud is not always easily followed, and while the law charitably prefers to sustain all business transactions which are reasonably explainable on the theory of fairness and honesty of all parties concerned, yet courts are not at liberty to ignore clear and convincing *indicia* of bad faith, or refuse to draw inferences of fraud from circumstances which irresistibly point to that result. We think it not an extravagant statement that this case, so far as it relates to the conduct of the appellants in dealing with plaintiff, is redolent with an atmosphere of undue advantage and fraud. It is very evident that in the hands of the tripartite alliance of Carter, Rumbaugh, and Marts the plaintiff, a simple, confiding, and inexperienced foreigner, was as helpless as a child, and that they were by no means unwilling to take advantage of the situation. We are abidingly satisfied of the sufficiency of the evidence in this respect, and nothing will be gained by prolonging this opinion to set out the evidence in detail.

1. FRAUD: evidence: inferences of fraud.

II.    Counsel further argue that while fraud is charged in the pleadings in general terms, the allegations are not sufficiently specific to enable plaintiff to recover on that ground. It is true the charge is somewhat general in form, but some facts are pleaded, and there is no motion for more specific statement. In the absence of such motion we are clear that the pleadings are sufficient, and afford no just ground of complaint. The case was tried by both parties as if the pleadings embraced all of the matters considered by the referee in making up his findings, and

2. FRAUD: pleading: sufficiency of allegation: objection.

it is too late to raise the objection for the first time in this court. *Harrison v. Kramer,* 3 Iowa, 543; *Gunsel v. McDonnell,* 67 Iowa, 521.

III.   Objection is made to the allowance of damages by the court, and to the measure applied in estimating the same.   The court appears to have assessed the plaintiff's recovery of damages at a sum equal to the net price which he was to receive for his property, less the sum of $5, which represents the sole payment received thereon.   If we understand counsel's argument, it is to the effect that plaintiff, having come into court seeking a rescission of the contract for sale of his property, is bound by his election to rescind, and can not be awarded a money judgment, as in an action at law.   Of the general rule to which appeal is thus made there can be no doubt; but, like most other rules, it is marked and emphasized by exceptions.   It is a well-settled proposition that, equity having once obtained jurisdiction of a controversy, if it be found that some act of the party charged has made the application of the specific remedy sought impossible or impracticable, the court will retain jurisdiction to assess damages in favor of the injured party, or to decree such other relief as may be just in the premises.   1 Pomeroy's Equity, section 237; *Holland v. Anderson,* 38 Mo. 55; *Van Dusen v. Bigelow,* 13 N. D. 277 (100 N. W. 723, 67 L. R. A. 288); *McMurray v. Van Gilder,* 56 Iowa, 607; *Renkin v. Hill,* 49 Iowa, 270; *Hoselton v. Dickinson,* 51 Iowa, 244; *Clinton v. Shugart,* 126 Iowa, 179; *Cole v. Getzinger,* 96 Wis. 559 (71 N. W. 75).   See, also, quite in point, *Campbell v. Moorehouse,* 141 Iowa, 568.

It would be a strange perversion of the spirit which pervades all rules of equity if, when a party, who has been defrauded of his title to land, brings the person who defrauded him into a court of equity, upon a demand for

3. FRAUD: cancellation of conveyances: equitable jurisdiction: damages.

rescission of the conveyance, he can divest the court of jurisdiction by showing that he has conveyed the title to an innocent purchaser, and thus compel the injured party to resort to another forum for the recovery of damages. It was not error, therefore, for the district court, on finding the title to the house and lot had been procured by fraud and had been conveyed to an innocent grantee, to assess damages in plaintiff's favor. Nor do we see any good reason to criticise the measure of recovery adopted. It was the amount which plaintiff would have received had the sale been carried out in good faith, and we must assume that it was the fair value of his interest in the property. The judgment entered is not, as counsel seem to think, a recovery upon the contract of purchase, but rather a recovery of the value of property of which plaintiff had been wrongfully deprived; reference being made to the contract price only as an item of evidence on the question of value. If an action be once properly begun in equity, the doctrine of election of remedies has no application to prevent the court retaining jurisdiction to award complete relief, even though conditions are found to be such that an assessment of damages is the only adequate remedy.

IV. At the conclusion of the trial, and before the filing of the referee's report, plaintiff filed an amendment to his petition by adding to his prayer for relief a request for a money judgment. After the referee's report had been made, appellants filed a motion to strike said amendment as having been filed out of time, and without leave of court, and calling for other and different relief than was originally prayed. The motion was overruled, and appellants assign error on the ruling. Appellants were in no manner prejudiced by the amendment. In his original petition plaintiff had asked generally for such relief as the court should find him entitled to in the premises, and it was entirely

4. SAME: pleadings: amendment.

competent for the court to award money damages without any specific prayer therefor. The amendment introduced no change in the issues, and called for no relief which could not properly have been awarded without it.

We find no good reason for interfering with the decree of the district court, and it is *affirmed*.