Green Bay Lumber Company, Appellant, v. Edwin Thomas, et al.

**Mechanic's Lien:** claims against county: *Filing.* Under Acts Twentieth General Assembly, chapter 179, section 2, providing for payment of sub-contractors of public building by the municipality on the filing of verified claims with the officer on whose order payment for such building is to be made, and the Code, section 482, requiring payment by county treasurers to be made only on warrants of the county auditor, a claim for material furnished for a county building must be filed with the county auditor, even where the board of supervisors appoint one member of the board a superintendent for the building, and direct the auditor to draw warrants for work on the building on his order. While the supervisor is a public officer, the law does not authorize him by virtue of his office to issue an order for payment of public money.

**Fraud in statement:** *Rights of sub-contractors.* A contractor who erected one building for a private person and also a jail with material furnished by a sub-contractor, made the latter a payment half of which was credited on the jail account. This application was, later, so changed as to make it, instead, a credit on the private building. The contractor insists that the change was made simply because he did not desire that a lien should exist against the private house. The weight of the evidence, however, shows that such change was made because the contractor represented that the original application was due to mistake. *Held,*

a    Under such circumstances, the change of account on the part of the sub-contractor, though it increased its claim against the jail by $200, which if allowed, would diminish the fund for the payment of the other sub-contractors, by that sum, did not amount to a fraud which would destroy its mechanic's lien.

b    But while this evidence negatives such fraud it does not establish that a mistake was in fact made in the application of the payment

c   So, while a judgment for the sum due after such change was made, might properly be rendered against the contractor, for the reason that debtor and creditor may change the application of a payment at will, as between themselves, such change will not be allowed to deprive other sub-contractors of any portion of the fund subject to their liens, and as to them, the representation by which the contractor obtained the change, are mere hearsay.

PAYMENT: *Variation of books of account.* A sub-contractor received a warrant for $400, from the contractor, paid him $100 in cash, credited him on its books with $400 and charged him with said $100. *Held,* it might be shown by parol that nothing more than reducing the sub-contractor's lien claim, by $300 was intended by the transaction.

*Appeal from Jackson District Court.*—HON. A. J. HOUSE, Judge.

MONDAY, OCTOBER 17, 1898.

ACTION to establish a claim against Jackson county for materials furnished in the erection of a jail. Six other sub-contractors filed cross petitions. The claim of plaintiff was not allowed, but judgment was rendered against the contractor, Edwin Thomas, for two hundred dollars less than the amount claimed. The claims of cross petitioners were allowed. The plaintiff appeals.—*Reversed.*

*C. C. & C. L. Nourse, D. A. Fletcher,* and *G. L. Johnson* for appellant.

*D. A. Wynkoop, W. C. Gregory, Levi Keck, Murray & Farr, D. T. Bauman,* and *R. W. Henry* for appellees.

LADD, J.—When the jail of Jackson county was completed, in 1896, there remained a balance unpaid to the contractor, Edwin Thomas, of one thousand one hundred and eighty dollars. The plaintiffs and defendants, except Thomas, are subcontractors, seeking to have their various claims allowed and paid out of this fund under the provisions of Chapter 179 of the Acts of the Twentieth General Assembly. Sworn and itemized accounts were filed with the

county auditor within the time limited,—that of plaintiff first,—but the other claimants also filed their accounts with one George Cooper, a member of the board of supervisors, who had been appointed by that body to superintend the construction of the building. This resolution had been adopted by the board: "The auditor is hereby authorized to draw warrants in favor of Edwin Thomas for building a jail in accordance with the contract on file upon certificate of Supervisor Cooper." In making payments the auditor had Cooper direct him on a piece of paper to issue a warrant for a particular amount, whereupon he would comply therewith. The defendant urges that under this state of facts, as plaintiff's claim was not filed with Cooper, no relief can be had; in other words, that as the auditor was directed by the board to issue warrants on the certificate of Cooper, claims must be filed with the latter, rather than with the county auditor. Section 2 of the chapter referred to is as follows: "Such claims shall be made by filing with the public officer through whose order the payment is to be made an itemized and sworn statement of the demand within 30 days after the performance of the last labor, or the furnishing of the last portion of the material, and claims shall have priority in the order in which they shall be filed." That George Cooper, as supervisor, was a public officer, is not questioned, but the law nowhere authorizes him, by virtue of that office, to issue an order for the payment of money. If he acquired such authority, it was by virtue of the resolution of the board. But that simply authorized the auditor to act under the direction of Cooper. The latter might audit the bill as just and true, and so certify it. This amounted to no more than a recommendation on which the auditor was directed by the board to act. The statute very evidently contemplates an officer authorized by law to issue warrants on the public treasury. If it were otherwise, then there would be no certainty as to the proper official with whom to file a claim, as this would depend upon the facts of each particular

case. As the auditor is the only officer "through whose order payment may be made" by the county treasurer (section 482, Code), we conclude that claims of this character must be filed with the auditor.

II.   The plaintiff's account, after rejecting some minor matters, concerning which there is no dispute, amounted to six hundred dollars and fifty-nine cents. Two items only are questioned. On October 2, 1896, Thomas, wishing to pay the company three hundred dollars and his employes one hundred dollars, procured a warrant of four hundred dollars from the county, transferred it to the plaintiff, and received one hundred dollars back. Instead of crediting him with the amount actually paid, the company credited him on the book with the amount of the warrant, and charged him one hundred dollars cash. It is insisted this cash item must be deducted from the account, because no lien may be established for money had and received. This would be giving more importance to the shadow than the real thing. Bookkeeping has not arrived at that state of perfection which precludes all oral explanation. *Chrislman v. Pearson,* 100 Iowa, 634. The entries as made indicated the right net credit, and oral evidence was admissible to show that both items were a part of the same transaction, and, rightly understood, showed the payment of three hundred dollars on the account.

III.   The contractors paid the plaintiff $400 on the thirtieth day of October, 1890, and this was acknowledged in a receipt in the words: "Received of Ed. Thomas $400; $200 on Dunham and $200 on jail." This two hundred dollars appeared on the books also credited on the materials furnished for the construction of the jail. Thomas called on Busby, the company's agent, December 23, 1896, and requested that this credit be transferred from the jail account, so as to apply on material furnished for the building

of a house for one Grant, against which the plaintiff had filed a mechanic's lien. There is a dispute as to what was said at that time. Thomas insists he gave as the only reason for asking a change his desire that a lien should not be placed on Grant's house, and that Busby declined to make the change, saying: "It might be, if we could put it with the jail bill, and that was allowed, then it could be credited on the Grant occount." The agent denies positively having made this statement, and both he and his brother, the company's bookkeeper, testify in the most positive way that Thomas insisted the two hundred dollars should have been credited on materials furnished for Grant's house; that Grant had paid the money, and that he (Thomas) had so directed Busby, and that the latter had misunderstood him; and further charged him with misapplying it purposely because of being on Thomas' bond for building the jail, and declared that the credit must be changed, and the mistakes corrected. They further testify that the items of credit were erased from the account of material furnished for the jail and the footings changed accordingly, and, as so changed, the account, when verified, was filed with the auditor. The evidence also shows that a single account was kept with Thomas, but the materials going into different buildings distinguished. Thus, on the book this two hundred dollars credit was followed by the word "Jail." Through this a pencil mark was drawn, and "Grant" written instead. No change was made in the account filed with the lien against Grant's house. We think this evidence fails to establish the fraud alleged by Suthers and Thomas, subcontractors. Thomas would hardly ask such a correction without stating a substantial reason for doing so. His version of the transaction is borne down by the testimony of two equally creditable witnesses and the attending circumstances. Neither Busby nor the company had the slightest interest in changing the item. Much stress is laid on the meager changes on the book of accounts. That book, as to these jobs, had been made

up, and alterations made at that time would not have helped matters, but they rather subjected the transaction to suspicion. The reasons suggested by Thomas as proving the mistake are such as might well have convinced Busby, and in making the correction the evidence fails to show that he acted in bad faith, or attempted double dealing. That an honest mistake in making up an account will not deprive the claimant of a lien is well established by the authorities. *Chase v. Mining Co.*, 90 Iowa, 25; *Lumber Co. v. Miller*, 98 Iowa, 468; *McMonagle v. Wilson*, 103 Mich, 264 (61 N. W. Rep. 495). We have found it unnecessary to determine whether the same rule applies against public corporations as in the case of a mechanic's lien, as, so conceding, the evidence fails to establish fraud on the part of the plaintiff.

IV.   But no mistake in fact has been shown as against the subcontractors. The receipt was drawn in accordance with the understanding of Busby and the representations of Thomas, which, while they establish the good faith of Busby, do not establish a mistake against the subcontractors. Thomas denies having made them, and, as against defendants other than him, they are not admissible in evidence as tending to prove a mistake, being in the nature of hearsay. As a general rule, a change in the application of payment may be made by the mutual consent of the parties. But this is subject of the just limitation that it cannot be done when third parties will be injuriously affected thereby. See *Hargroves v. Cooke*, 15 Ga. 321; *Thayer v. Denton*, 4 Mich. 192; *Smith v. Wood*, 1 N. J. Eq. 74; *Terhune v. Colton*, 12 N. J. Eq. 232; *Berghaus v. Alter*, 9 Watts, 396; *Chancellor v. Schott*, 23 Pa. St. 68. To permit the change here would deprive the subcontractors of that portion of their fund, as the entire amount will not satisfy their claims. That, under such circumstances, change in the application of payment may not be made, is determined in *Chicago Lumber Co. v. Woods*, 53 Iowa 552. That was a mechanics' lien case, but the principle is the same whether the claim is charged

against a building or a particular fund. As no mistake was made in the application of the two hundred dollars, the parties had no authority to change it in a manner to injure the subcontractors.

V. As between the plaintiff and Thomas, however, the change was binding. They could have payments applied and changed at will between themselves. It follows that the plaintiff is entitled to judgment against Thomas for the sum of six hundred dollars and fifty-nine cents, with interest, and to have four hundred dollars and fifty-nine cents of this established as a claim against the fund due from the county.—REVERSED.